UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GOBIND G.<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN C. DEAN, SHERIFF, LAWRENCE COUNTY JAIL, OFFICIAL CAPACITY; DAVID EASTERWOOD, ACTING DIRECTOR, ST. PAUL FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, OFFICIAL CAPACITY; MARKWAYNE MULLIN, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICIAL CAPACITY; TODD BLANCHE, ACTING ATTORNEY GENERAL OF THE UNITED STATES, OFFICIAL CAPACITY; AND UNITED STATES OF AMERICA,<br><br>Defendants. | 5:26-CV-05094-RAL<br><br>OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS |

The Department of Homeland Security's Immigration and Customs Enforcement (ICE) has detained Petitioner Gobind G. since May 19, 2026, after his tractor-trailer caught fire on Interstate 90 in western South Dakota. On July 25, Gobind G. filed a Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking injunctive relief and court-ordered release. Doc. 1. Respondents[1] seek denial of the Petition, filing a Declaration of Ivan Sabin Deportation Officer to

[1] Respondent Brian C. Dean, Sheriff of Lawrence County, "takes no position on the Petition for Habeas Corpus and defers to the Federal Respondents." Doc. 12. This decision refers to

provide additional information. Doc. 7. Gobind G. has filed a Reply, Doc. 14. For the reasons explained below, this Court denies and dismisses the Petition without prejudice.

## I. Facts Established in the Record

On March 6, 2023, Gobind G. entered the United States without inspection or authorization near Lukeville, Arizona. Doc. 1 at 5. Gobind G. is a citizen of India. Doc. 1 at 5; Doc. 7 at 1. Shortly after Gobind G. entered the United States, on March 9, 2023, immigration officials detained him and placed him in removal proceedings. Id. On March 10, 2023, ICE released Gobind G. on an Order of Release on Recognizance. Id.; Doc. 7-5. On or about July 17, 2023, Gobind G. filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, which remains pending. Doc. 1 at 5.

The Petition and matters of record provide very little additional information on Gobind G. He evidently obtained a commercial driver's license issued by the state of California and worked as a trucker. Docs 7-2, 7-3. The Petition states that he has fully complied with all requirements and cooperated with immigration officials at all times. Doc. 1 at 6, 16. The record is silent on whether Gobind G. has employment authorization. The I-213 Form reveals that he has a wife in India, his parents are citizens of India, and his point of contact in the United States is an uncle, though where Gobind G. and the uncle live is redacted in the record. Docs. 7-2, 7-3.

On May 19, 2026, Gobind G. was driving a commercial vehicle on Interstate 90 in western South Dakota when a tire of his rig blew, causing him to lose control of the unit and a fire ensued. Doc. 1 at 5; Doc. 7 at 1. The South Dakota Highway Patrol (SDHP) responded and cited Gobind G. for failure to maintain a single lane. Doc. 1 at 5. Gobind G. understood that he was being taken

---

"Respondents" in describing arguments and positions to mean all respondents other than Sheriff Dean.

to a motel, but upon learning he was a non-citizen, the SDHP took him to an ICE office instead. Id. Gobind G. has remained in custody ever since, presently at the Lawrence County Jail in Deadwood, South Dakota. Id. Gobind G. has not received a detention hearing since his May 19 arrest. He had an immigration hearing on July 30, 2026, and is scheduled for an individual hearing on his asylum application on September 4, 2026. Doc. 7 at 2. There is nothing in the record that Gobind G. has claimed a fear of persecution or torture in India.

On July 25, 2026, Gobind G. filed the Petition, asserting, among other things, that he is entitled to immediate release or a bond hearing because his prolonged detention without a hearing violates his Fifth Amendment right to due process. Doc. 1. The Petition contains four counts: (1) Unlawful Detention in Violation of Statute; (2) Violation of the Due Process Clause of the Fifth Amendment; (3) Violation of the Administrative Procedure Act (APA); and (4) Violation of the Accardi doctrine for ICE failing to follow its own regulations. On July 28, 2026, this Court issued a temporary restraining order enjoining for fourteen days Gobind G.'s removal or transfer outside the District of South Dakota until further order so there was no risk that his removal would deprive this Court of jurisdiction over his Petition. Doc. 3. On August 11, 2026, this Court extended this order for an additional fourteen days to allow completion of briefing. Doc. 10. That second temporary restraining order is now expiring.

## II. Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of the confinement and, if successful, obtain release. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973). Habeas corpus relief under 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detention, Zadvydas v. Davis, 533 U.S. 678, 687 (2001), but a court's jurisdiction to hear such claims is limited, see 8 U.S.C.

§ 1226(e); Demore v. Kim, 538 U.S. 510, 516–17 (2003). The petitioner bears the burden of proving by a preponderance of the evidence that his or her detention is unlawful. Walker v. Johnston, 312 U.S. 275, 286 (1941); Aleksei M. v. Warden, 5:26-cv-5030-RAL, Doc. 19 at 6 (April 27, 2026).

In his Petition, Gobind G. asserts that his detention without a bond determination violates the Due Process Clause of the Fifth Amendment and that Respondents are violating their own regulations and governing statutes. Doc. 1. The current administration directed in July of 2025 that non-citizens like Gobind G. are subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and are not entitled to release. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1150 (D. Minn. 2025) (noting new interim guidance and discussing historical treatment of noncitizens residing in the United States and interpretations of §§ 1225 and 1226). Before July of 2025 and as previously and widely understood, 8 U.S.C. § 1226 would have provided a statutory claim for Gobind G. to a bond hearing. See Esli D. B.G. v. Bondi, No. 5:26-CV-05020-RAL, 2026 WL 734992, at *4 (D.S.D. Mar. 16, 2026).

Several circuit courts have applied a conventional reading and historical understanding to hold that § 1225 is distinguishable from § 1226. Under this reading, these courts have prohibited ICE from ignoring the statutory right to a bond hearing for people like Gobind G. who are released from ICE custody initially, have an asylum application pending, and are law-abiding. See, e.g., Rodriguez Vazquez v. Bostock, 2026 WL 2196424 (9th Cir. 2026); Lopez Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258 (11th Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026). But a panel of the United States Court of Appeals for the Eighth Circuit decided differently, choosing to interpret "applicant for admission" in 8 U.S.C. § 1225 very broadly to apply not only to those stopped at or

close to the border, but also to those who have lived and worked for years in the United States awaiting determination of their status to remain in the United States. Avila v. Bondi, 170 F.4th 1128, 1132–38 (8th Cir. 2026). This Court is bound by the majority decision's statutory interpretation in Avila, despite that decision having the effect of rendering much of § 1226 "superfluous," as Judge Ralph Erickson noted in dissent. See id. at 1138–41 (Erickson, J., dissenting). The Avila decision undercuts Gobind G.'s claims in Counts One, Three, and Four, and of course precludes this Court from granting relief on the Petition's assertion that Avila was wrongly decided. However, Avila addressed only the statutory right to a bond hearing and not the constitutional claim raised by Gobind G. in his Petition. See id. at 1140 n.8 (Erickson, J., dissenting).

Over the course of the last year and a half, the executive branch has made fundamental changes to the policies and procedures compromising federal immigration law, much of which has been contested. See, e.g., Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem, 793 F. Supp. 3d 19, 42, 86, 89, 94–97 (D.D.C. 2025), aff'd Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin, No. 25-5243, 2026 WL 1110616 (D.C. Cir. Apr. 24, 2026) (affirming grant of summary judgment in favor of plaintiffs and affirming but modifying class certification order).[2] But all immigration policy changes remain "subject to important constitutional limitations" as the

[2] See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem, 793 F. Supp. 3d 19, 42 (D.D.C. 2025) (concluding "that neither the INA nor the Constitution grants the President or the Agency Defendants authority to replace the comprehensive rules and procedures set forth in the INA and the governing regulations with an extra-statutory, extra-regulatory regime for repatriating or removing individuals from the United States, without an opportunity to apply for asylum or withholding of removal and without complying with the regulations governing CAT protection"), aff'd Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin, No. 25-5243, 2026 WL 1110616, at *2 (D.C. Cir. Apr. 24, 2026) ("We conclude that the INA's text, structure, and history make clear that in supplying power to suspend entry by Presidential proclamation, Congress did not intend to grant the Executive the expansive removal authority it asserts.").

Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693, 695; see also A.A.R.P. v Trump, 605 U.S. 91, 94 (2025) (per curiam) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act); Refugee & Immigrant Ctr. for Educ. & Legal Servs., 793 F. Supp. 3d at 89. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) (cleaned up and citation omitted). Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 332 (cleaned up and citation omitted). The Supreme Court has observed in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens," Mathews v. Diaz, 426 U.S. 67, 79–80 (1976), and "the nature of th[e] protection" to which noncitizens are entitled under the Due Process Clause "var[ies] depending upon status and circumstance." Zadvydas, 533 U.S. at 693–94. Therefore, this Court considers what protections Gobind G. is entitled to as a noncitizen detained under § 1225(b)(2) during his removal proceedings.

This Court and multiple other district courts within the Eighth Circuit have applied the factors established by Mathews v. Eldridge, 424 U.S. 319 (1976), when reviewing due process claims brought by detained noncitizens like Gobind G. See Aleksei M. v. Warden, No. 5:26-CV-05030-RAL, 26 WL 1133615, (D. S.D. April 27, 2026); David J.C.P. v. Blanche, No. CV 26-2181 (DWF/ECW), 2026 WL 1102725 (D. Minn. Apr. 23, 2026); Abbas v. Schneider, No. 4:26-cv-00132-SHL-WPK (S.D. Iowa Apr. 17, 2026); Almazov v. Williams, No. 4:26-cv-00080-RGE-

HCA (S.D. Iowa Apr. 16, 2026); Muse v. Mullin, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532 (N.D. Iowa Apr. 14, 2026); Osman J.M.A. v. Blanche, No. CV 26-2123 (DWF/DJF), 2026 WL 1005056 (D. Minn. Apr. 14, 2026); Alicia N.F.C. v. Blanche, No. 26-2145 (DWF/JFD), 2026 WL 1005079 (D. Minn. Apr. 14, 2026); Pedro A.D.L.O.O. v. Bondi, No. 26-1959 (DWF/DJF), 2026 WL 948970 (D. Minn. Apr. 8, 2026); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1148–54 (D. Minn. 2025). Cf. Singh v. Mullin, No. C26-56-LTS-MAR, 2026 WL 1021846 (N.D. Iowa Apr. 15, 2026); Ermekov v. Mullin, No. C26-41-LTS-KEM, 2026 WL 1046766 (N.D. Iowa Apr. 17, 2026). But see, e.g., Gonzalez-Martinez v. Blanche, No. 8:26CV143, 2026 WL 1045701 (D. Neb. Apr. 17, 2026); Sanchez v. Bondi, No. 1:26-cv-00063, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026).

Respondents ignore the interest balancing test under Mathews, Doc. 6. But neither the Eighth Circuit's decisions in Avila and Banyee v. Bondi, 165 F.4th 1086 (8th Cir. 2026), nor the current administration's approach to immigration law renders Mathews inapplicable. The Mathews factors to determine whether civil detention violates due process are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. First, a detainee's interest in release from detention is "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529-31 (2004). "A noncitizen who has lived for years in the interior of the United States and established connections in the country acquires a protectible liberty interest." Abbas. No. 4:26-cv-132, at 11 (quoting Barrera Leon v. Warden. No. 4:26-1341,2026 WL 90519, at *3 (S.D. Tex. Apr. 2,2026)); See

Zadvydas, 533 U.S. at 692-94. Gobind G. had been in the United States for over three years between his release from initial detention on March 10, 2023, and his arrest on May 19, 2026.

As to the second Mathews factor, Gobind G. argues that he has had no bond hearing nor any process to meaningfully assess whether he should be detained during the pendency of his removal proceedings. Other district courts have characterized the risk of erroneous deprivation as "severe" when "[r]espondents are proposing *no procedure at all*." Abbas. No. 4:26-cv-00132, at 12 (emphasis in original). Gobind G. has a hearing on his asylum application within two weeks, on September 4, 2026. The promptness of that hearing lowers the risk of an erroneous deprivation of rights, as Gobind G.'s admission status presumably will soon be determined. The circumstances of Gobind G.'s case suggest a limited basis to fear an erroneous deprivation here.

This Court previously granted a petition in a somewhat similar case in Aleksei M., but the differences between Gobind G.'s case and Aleksei M.'s case are material. See Aleksei M., 2026 WL 1133615, at *1-3. Aleksei M. presented himself at the border to immigration officials with his wife and minor child seeking asylum as a pro-democracy supporter of Vladimir Putin's now-deceased political rival Alexei Navalny. Aleksei M., 2026 WL 1133615, at *1. Gobind G. has made no claim of fear of any such persecution in India, and the record is unclear whether he presented himself to immigration officials upon arrival or was intercepted by them. Aleksei M. had a history of compliance with DHS, including notifying DHS when the family moved to Illinois. Id. The record here contains little information about Gobind G.'s whereabouts, though his Petition avers that he has fully complied with immigration authorities and has been law-abiding. Aleksei M. had a plausible claim to an error in immigration paperwork, and his wife and minor child were not being subject to deportation. Id. Gobind G. has no similar claims and his wife is in India. While Aleksei M. had work authorization, it is unclear if Gobind G. did. Although both Aleksei

M. and Gobind G. encountered law enforcement after minor traffic violations, the differences make the risk of erroneous deportation far greater in Aleksei M.'s case than in Gobind G.'s case. Moreover, Gobind G. soon will have an opportunity to support his asylum petition administratively. Gobind G.'s case is far closer to a case where this Court recently decided a similar petition—Simranjeet S. M. v. Attorney General, 5:26-cv-05087-RAL, Doc. 17 (Aug. 18, 2026)—than to the Aleksei M. case.

As to the third Mathews factor, the Government has a recognized significant interest in "ensuring that persons subject to removal do not commit crimes or evade law enforcement," Maldonado, 795 F. Supp. 3d at 1153–54. Gobind G. appears to have no criminal record.[3] In the past, courts have held that "[t]he Government's interest in continuing to detain Petitioner is further diminished where . . . the Petitioner has no criminal record, has attended all of his immigration court hearings, and has significant ties to the community—factors that bear directly on flight risk and dangerousness." Bonilla Chicas v. Warden, No. 5:26-CV-00131, 2026 WL 539475, at *11 (S.D. Tex. Feb. 20, 2026). The record lacks information about Gobind G.'s ties to any particular community. Gobind G.'s continued detention furthers the Government's interest in ensuring that he appears at future hearings. The fiscal and administrative burdens at issue, the costs of detention pending deportation of non-violent asylum seekers coupled with the preexisting regulations on individualized detention assessments weigh against the Respondents, but do not outweigh the legitimate interests at stake under the unique circumstances of this case. See Almazov, No. 4:26-cv-00080, at 14. (citing 8 C.F.R. § 212.5(b) (2022)); See also Hyppolite v. Noem, 808 F.Supp.3d 474, 494 (E.D.N.Y. 2025). Gobind G.'s private interest in liberty is high, but the risk of erroneous

[3] Gobind G.'s California commercial driver's license does not match his name identically, but that could have been a clerical error. He was cited for a lane change violation, but that appears to have been caused by the tire blowout.

deprivation of that interest under the circumstances seems limited. Thus, this Court finds that the third factor weighs in favor of the Respondents.

Because the Mathews factors do not weigh in favor of Gobind G., this Court concludes that Respondents did not violate Gobind G.'s due process rights by detaining him without a bond hearing under these circumstances. With the Avila decision having, rightly or wrongly, stripped rights to a detention hearing under § 1226 to allow the administration to treat people who have been in the United States for years like Gobind G. as "applicants for admission" under § 1225, this Court cannot employ the APA or the Accardi decision to rule differently than Avila on statutory or regulatory grounds. In the wake of Avila, Gobind G.'s claim to habeas relief relies solely on the Fifth Amendment, and his case falls short of justifying the order for release from custody that he seeks.

## I. Conclusion

For the reasons explained above, it is

ORDERED that the Petition is denied, and this case is dismissed without prejudice to filing another Petition depending on the outcome of Gobind G.'s asylum application or length of detention without bond hearing.

DATED this 27th day of August, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE